UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

STREAM FAMILY LIMITED   :   CIVIL ACTION NUMBER: _____
PARTNERSHIP


VERSUS   :   JUDGE: _____

STATE FARM FIRE & CASUALTY
COMPANY   :   MAGISTRATE JUDGE: _____

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes **STREAM FAMILY LIMITED PARTNERSHIP**, a foreign limited partnership domiciled in the State of Texas, with all its partners, both general and limited, being domiciled respectively in either the State of Louisiana or the State of California, and whose principal business office is located in Calcasieu Parish, Louisiana, which respectfully states that:

1.

Made defendant herein is **STATE FARM FIRE & CASUALTY COMPANY** ("**STATE FARM**"), a foreign insurance corporation authorized to do business and doing business in the Parish of Calcasieu, State of Louisiana, and with an agent for service of process in the State of Louisiana to wit: Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809.

2.

**STATE FARM** insured property owned by **STREAM FAMILY LIMITED PARTNERSHIP** ("**STREAM**") at 2417 Shell Beach Drive, Lake Charles, Louisiana 70601, under **STATE FARM** policy number 98-BE-VO93-3.

3.

**STREAM** timely paid all annual premiums required and Policy Number 98-BE-VO93-3 was in full force and effect on August 27, 2020, and on October 9, 2020.

4.

The subject **STATE FARM** policy provided the following pertinent coverages for the **STREAM** property at 2417 Shell Beach Drive, Lake Charles, LA 70601:

| | | |
|---|---|---|
| a. | Coverage A – Buildings | $2,135,600 |
| b. | Coverage B – Business Personal Property | $331,625 |
| c. | Auxiliary Structures – Garage | $151,300 |
| d. | Debris Removal | 25% of covered loss |
| e. | Newly Acquired Business Personal Property | $100,000 |
| f. | Newly Acquired or Constructed Buildings | $250,000 |
| g. | Outdoor Property | $5,000 |
| h. | Personal Effects | $2,500 |
| i. | Pollutant Clean Up and Removal | $10,000 |
| j. | Preservation of Property | 30 days |
| k. | Property of Others | $2,500 |
| l. | Signs | $2,500 |
| m. | Loss of Income and Extra Expense | Actual Loss Sustained – 12 months |
| n. | Spoilage | $100,000 |
| o. | Expedited Repair Expenses | $100,000 |

5.

The insurance contract required **STATE FARM** to pay **STREAM** the replacement cost of all wind damage caused to its insured property by Hurricane Laura and Hurricane Delta.

6.

Hurricane Laura and its aftermath caused significant damage to **STREAM**'s main structure, the contents thereof, several ancillary structures and the contents of same, business personal property, perishable goods, works of art/antiques, trees, fountains, statutes, pergolas, signage, and other covered losses at 2417 Shell Beach Drive, Lake Charles, LA 70601 ("the Stream property"). Unfortunately, the bad faith handling of its claim has caused **STREAM** to file this lawsuit to force the insurance company to abide by its contract and Louisiana law.

7.

On August 25, 2020, Hurricane Laura entered the Gulf of Mexico and began to intensify. By the evening of August 26, 2020, Hurricane Laura was designated a Category 4 hurricane after completing a process known as "rapid intensification." The storm made landfall at Cameron, Louisiana with sustained winds of 150 mph and a minimum central pressure of 938 millibars.

8.

Widely known publicly available information, namely well-established ratings relied upon by the National Oceanic and Atmospheric Administration's National Hurricane Center, describes the expected damage from a Category 4 Hurricane. **STATE FARM** knew well before landfall exactly what type of damage to expect from a storm of this severity:

> Well-built framed homes can sustain severe damage with loss of most of the roof structure and/or some exterior walls. Most trees will be snapped or uprooted and power poles downed. Fallen trees and power poles will isolate residential areas. Power outages will last weeks to possibly months. Most of the area will be uninhabitable for weeks or months. *Saffir-Simpson Hurricane Wind Scale.*

9.

Unfortunately, Hurricane Laura experienced little to no weakening prior to landfall making it the strongest hurricane to affect Southwest Louisiana in recorded history. As expected, wind damage in Calcasieu Parish was catastrophic.

10.

The available data confirmed Hurricane Laura was a catastrophic storm. The National Weather Service office in Lake Charles, Louisiana recorded the highest wind gust in station history at 133 mph. There can be no reasonable dispute that the wind speeds exceeded this station record because the wind equipment used to record it failed shortly after the measurement was recorded. Further, the station deployed the Automated Surface Observing System, which is the most reliable and accurate sensor used to obtain barometric pressure readings. Barometric pressure readings are widely accepted as a key indicator of the strength of a hurricane.  Barometric pressure directly influences wind because air flows from areas of high to low pressure.  The eye of Hurricane Laura is believed to have passed nearly directly over the station when it recorded a station record

minimum sea level pressure of 956 millibars.  It is widely known and accepted that the areas impacted by the eye of a hurricane experience the highest winds and the most catastrophic damage.

11.

As residents of Calcasieu Parish are very aware, the aftermath of the storm can also be devastating. The damage wrought by Hurricane Laura left most homes and businesses exposed to rain and humidity. On August 28, 2020, before most residents had an opportunity to return and assess damage, much less begin temporary repairs, torrential rains inundated many homes and businesses, including the insured premises, because of damaged roofs, windows, doors, etc.

12.

Hurricane Laura caused significant damage to the Stream property.

13.

On or about October 9, 2020, Hurricane Delta struck Calcasieu Parish, Louisiana.  Prior to landfall of Hurricane Delta, the covered property was subjected to hurricane force winds for many hours.

14.

The remaining covered property was again severely damaged and/or destroyed by Hurricane Delta.

15.

**STATE FARM** was timely notified of the loss. **STATE FARM's** adjuster inspected the Home and estimated the cost to repair the damage. This inspection constituted satisfactory proof of loss sufficient to provide **STATE FARM** with actual knowledge of the scope and extent of the damage to the Stream property.

16.

On September 10, 2020, **STREAM** retained public adjusting firm Central Florida Public Adjusting, Inc. and its adjuster Robert "Steve" Speer ("Mr. Speer") to provide a damage estimate for the Stream property.  Mr. Speer completed his report on September 25, 2020.  Mr. Speer's report was submitted to **STATE FARM** no later than December 8, 2020.  Mr. Speer's estimate was in the total amount of $1,863,856.82 inclusive of the main structure and all ancillary structures, but exclusive of any contents or other coverages.

17.

On September 17, 2020, **STATE FARM's** adjuster, Mike McHenry, inspected the Stream Property.  The adjuster's estimate was as follows: $131,104.34 in damages under Coverage A – Dwelling Coverage (amount is after deduction of non-recoverable depreciation, contractor overhead and profit on recoverable and non-recoverable depreciation, and application of deductible).; and $13,243.54 in damages under Coverage B – Other Structures (amount is after deduction of non-recoverable depreciation, contractor overhead and profit on recoverable and non-recoverable depreciation, and application of deductible).

18.

On September 22, 2020, **STATE FARM** issued payment to **STREAM** in the amount of $35,000 under Coverage B for an advance on loss of business personal property.

19.

On November 12, 2020, 2020, **STATE FARM** issued payment to **STREAM** in the amount of $68,172.16 for "actual cash value payment for damages to main building and garage".

20.

On February 12, 2021, **STATE FARM** issued payment to **STREAM** in the amount of $76,175.72, believed to be an additional payment under Coverage A for the main structure and the detached garage.

21.

**STATE FARM** has made no further payments as of this filing.

22.

In February 2021, **STREAM** retained professional engineer Charles R. Norman ("Mr. Norman") to conduct a complete forensic analysis of the damage to the Stream property, including but not limited to scope of loss, cause of loss, extent of loss/damage, and necessary repairs resultant therefrom, all in support and substantiation of Mr. Speer's estimate.  Mr. Norman generated a report dated May 10, 2021, which was provided to **STATE FARM** shortly thereafter.

23.

On January 27, 2022, undersigned counsel for **STREAM** sent **STATE FARM** a total of $542,423.69 in paid invoices for work completed to date for hurricane damage to the Stream property.  As of this filing, **STATE FARM** has paid none of these invoices.

24.

On January 27, 2022, undersigned counsel for **STREAM** sent **STATE FARM** a total of $312,723.40 in estimates for additional work required for hurricane damage to the Stream property.  As of this filing, **STATE FARM** has paid none of these estimates.

25.

**STREAM** has also sustained covered losses which include but are not limited to debris removal, emergency mitigation, preservation of property, business personal property, outdoor property, personal effects, loss of income and extra expense, spoilage, expedited repair expenses, signs, and property of others.  **STATE FARM** has not timely and/or correctly paid **STREAM** for these items under the coverages and terms of the policy.

26.

**STATE FARM** has denied appropriate coverage for the damages sustained to the covered properties.

27.

The damages sustained to the covered properties occurred prior to the damage to the covered properties by any non-covered peril, including any type of water damage purportedly excluded by the policy.

28.

**STATE FARM** has failed to pay the amount of the claim due to Petitioner within thirty (30) days of receipt of satisfactory proof of loss.

29.

**STATE FARM** has failed to make a written offer to settle **STREAM**'s claim within thirty (30) days after receipt of satisfactory proof of loss.

30.

**STATE FARM**'s failure to pay the amount of **STREAM**'s property damage claims within thirty days and the failure to make a written offer to settle **STREAM**'s property damage claims within thirty days is arbitrary, capricious and without probable cause.  Pursuant to LSA-R.S. 22:1892, in addition to the amount of damage sustained, **STATE FARM** is liable to **STREAM**, for an additional fifty percent (50%) in penalties on the amount found to be due from **STATE FARM** to **STREAM**, or $1,000.00, whichever is greater, plus reasonable attorney's fees.

31.

Pursuant to LSA-R.S. 22:1973, **STATE FARM** owes **STREAM** a duty of good faith and fair dealing in the handling of the claims.  **STATE FARM** also has an affirmative duty to adjust **STREAM**'s claims fairly and promptly and to make a reasonable effort to settle **STREAM**'s claims.  **STATE FARM** has breached this duty and said breach has been arbitrary and capricious and/or without probable cause.

32.

Because of the actions alleged above, **STATE FARM** is liable to **STREAM**, in addition to any general or special damages to which **STREAM** is entitled for breach of the imposed duty set forth above, for penalties in an amount not to exceed twice the damages sustained as a result of the breach or $5,000.00, whichever is greater, pursuant to LSA-R.S. 22:1973 and LSA-R.S. 22:1892.

33.

**STREAM** requests a trial by civil jury.

*******

WHEREFORE, Petitioner, **STREAM FAMILY LIMITED PARTNERSHIP**, prays:

(A.)   That the Defendant, **STATE FARM FIRE & CASUALTY COMPANY**, be duly cited and served with a copy of this Petition for Damages and be ordered to answer same in the manner provided by law;

(B.)   That after due proceedings, there be judgment herein in favor of Petitioner, **STREAM FAMILY LIMITED PARTNERSHIP** and against Defendant, **STATE FARM FIRE & CASUALTY COMPANY**, for such damages as the court finds to be just and reasonable, including penalties and attorney's fees, together with legal interest from the date of judicial demand, until paid, and for all costs hereof;

(C.)   For all orders and decrees necessary in the premises and for full, general, and equitable relief; and

(D.)   For trial by jury.

Respectfully submitted,


____/S/ *Matthew P. Keating*_____
DAVID P. BRUCHHAUS (#24326)
CHAD E. MUDD (#25188)
MATTHEW P. KEATING (#30911)
WESLEY A. ROMERO (#33344)
JAMIE C. GARY (#29203)
**MUDD, BRUCHHAUS & KEATING, LLC**
422 E. College Street, Suite B
Lake Charles, LA 70605
Telephone: (337) 562-2327
Facsimile: (337) 562-2391

*Attorneys for Petitioner,*
**STREAM FAMILY LIMITED PARTNERSHIP**


**PLEASE SERVE:**

**STATE FARM FIRE & CASUALTY COMPANY**
Through its registered agent for service:
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809